IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK JAMES, by and through THE JAMES AMBROSE JOHNSON, JR. 1999 TRUST, his successor in interest, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>UMG RECORDINGS,<br><br>      Defendant.<br>_____/ | No. C 11-1613 SI; Related Case C 11-2431 SI<br><br>**ORDER DENYING DEFENDANT'S MOTIONS TO TRANSFER VENUE AND TO DISMISS IN BOTH RELATED CASES; DENYING MOTION TO INTERVENE**<br><br>Order to be filed in both cases |

Now before the Court are defendant's motions to dismiss or transfer these related cases based on improper venue, defendant's motions to dismiss plaintiffs' claims under California Business & Professions Code § 17200, and a motion to intervene filed by The Tubes. For the reasons set forth below, the Court DENIES defendants' motions to transfer and to dismiss, and DENIES the motion to intervene.

**BACKGROUND**

Plaintiffs in these two related cases have filed putative nationwide class actions against UMG Recordings, Inc. The *James* and *Zombie* plaintiffs seek to represent the same class of recording artists, music producers, and other royalty participants. The complaints allege that UMG has failed to properly account for and pay its recording artists and music producers for income it has received, and continues to receive, from the licensees of its recorded music catalog for the sale of digital downloads and

ringtones (or "mastertones"). *James* Compl. ¶ 2.[1]

Plaintiffs allege that UMG has entered into license agreements with download music providers such as Apple/iTunes, Liquid Digital Media, and Rhapsody Music, among others, who for a price download digital music to consumers' playback devices. *Id*. ¶ 17. Plaintiffs allege that "mastertones" provide another avenue for the licensing of sound recordings. *Id*. ¶ 21. According to the complaints, a mastertone "is a portion of a sound recording converted into a digital file that consumers download directly to their mobile phones to customize the sound the phones make when they receive a call, or that a caller hears when placing a call, paying between $1.00 and $3.00 for each mastertone downloaded." *Id*. The companies offering mastertones include mobile phone companies (such as AT&T Wireless, Sprint, T-Mobile, and Verizon Wireless), content owners (such as MTV and VH1), and third-party aggregators (such as Zed, Hudson Soft, jamster, and iTunes). *Id*. The complaints allege that all of these mastertone providers have obtained licenses from UMG authorizing these companies to distribute and sell mastertones of the recordings in its catalog of sound recordings.

The complaints allege that the digital download and mastertone income received by UMG derives from a license, and that UMG is required to account to and pay the royalty participants a sizeable percentage of the licensing income pursuant to the terms of UMG's contracts with recording artists and music producers. The complaints allege that UMG has violated these contracts by improperly characterizing the agreements between UMG and sellers of downloads and mastertones as "resale" agreements, not license agreements; sales made under "resale" agreements "entitle the recording artists and music producers to a much smaller percentage of the income derived therefrom than does the income derived from a license agreement." *Id*. ¶ 5.

The complaints allege that "UMG and one of its owned and distributed record labels, Aftermath Records, spent millions of dollars contesting this precise issue in protracted litigation. But the Ninth Circuit Court of Appeals found that UMG failed as a matter of law to properly account for and pay such income to the royalty participants in that case, a decision that the U.S. Supreme Court recently declined to review. *See F.B.T. Productions, Inc. v. Aftermath Records*, 621 F.3d 958 (9th Cir. Sept. 3, 2010),

---

[1] The *James* and *Zombie* complaints contain very similar allegations, and thus for ease of reference this order cites the *James* complaint.

2

*cert. denied*, 79 U.S.L.W. 3370 (March 21, 2011)." *Id*. ¶ 2.[2] The complaints allege claims for breach of contract, declaratory judgment, open book account, and violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.

**DISCUSSION**

**I.  Motions to dismiss or transfer based on improper venue**

    **A.  Forum selection clause**

Defendant moves to dismiss or transfer these cases based on improper venue. Defendant contends that the *Zombie* action should be transferred based on a forum selection clause contained in a January 1, 2000 contract between plaintiff Rob Zombie and UMG. In response, the *Zombie* plaintiffs clarify that Rob Zombie is not alleging any claims under the January 1, 2000 contract. The *Zombie* plaintiffs contend that venue is proper in this district because none of the named plaintiffs' five contracts that are at issue contain a forum selection clause. Thus, based upon the *Zombie* plaintiffs' clarification, there is no forum selection clause to enforce in that case.

With regard to the *James* action, defendant contends that the case should be transferred because the *James* complaint alleges claims for unpaid royalties under a 1977 agreement between Rick James and Motown Record Company (of which defendant UMG Recordings is a successor), which contains a forum selection clause stating that "all disputes between you and Company shall be litigated in the appropriate courts situated in Los Angeles, Calif." Ciongoli Decl. Ex. A ¶ 26. Plaintiff contends that it would be unreasonable to enforce the 1977 forum selection clause because, *inter alia*, the *James* complaint also alleges claims under a 1979 agreement between James and Motown Record Company that does not contain a forum selection clause, and virtually all of Rick James' recorded music at issue in this case is governed by the 1979 agreement.

The Ninth Circuit has held that "the rule set forth by the Supreme Court in *M/S Bremen v. Zapata Off-Shore Co.*, controls the consideration of a motion to dismiss for improper venue based upon

---

[2] The parties dispute whether *F.B.T. Productions* has any collateral estoppel effect in this case. This issue is not presented by the current motions, and the Court does not express any view on this issue at this time.

3

a forum selection clause." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 496 (9th Cir. 2000). In *Bremen*, the Supreme Court held that a forum selection clause is presumptively valid and should not be set aside unless the party challenging the clause "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Bremen*, 407 U.S. 1, 15 (1977). The Court concludes that under the circumstances of these cases, it would be unreasonable to transfer the *James* action based on the forum selection clause contained in the 1977 contract. Assuming *arguendo* that the forum selection clause is valid and enforceable, that clause only governs the claims brought under the 1977 agreement. In analogous circumstances, courts have found it unreasonable to enforce a forum selection clause that applied to some but not all of the plaintiff's claims. *See Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848, 852 (8th Cir. 1987) (affirming district court's denial of motion to dismiss based on forum selection clause where the plaintiff's claims were broader than those subject to the clause), abrogated on other grounds by *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 501 (holding denial of motion to dismiss on forum selection grounds is not immediately appealable); *Pegasus Transp. Inc. v. Lynden Air Freight, Inc.*, 152 F.R.D. 574, 577 (N.D. Ill. 1993) (declining to enforce forum selection clause where clause did not apply to over half of the plaintiff's claims); *Vision Tech. Design & Mfg. v. General Wire Spring Co.*, No. CV-F-07-412 OWW/WMW, 2007 WL 2069945, at *8 (E.D. Cal. July 17, 2007) (declining to enforce forum selection clause contained in purchase orders where "not all of [plaintiff's] claims are based on breach of the purchase orders and [plaintiff's] claim for declaratory relief as to an intellectual property dispute is not based on a contract resulting from a purchase order.").

Accordingly, the Court DENIES defendant's motions to dismiss or transfer venue based upon forum selection clauses.

### B. Transfer pursuant to 28 U.S.C. § 1404(a)

Alternatively, defendant moves to transfer venue pursuant to 28 U.S.C. § 1404(a), contending that the Central District is a more convenient venue. A motion for transfer lies within the broad discretion of the district court, and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d at 498. To support a motion for transfer, the moving party must establish:

4

(1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses, and will promote the interests of justice. *See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992). Defendant bears the burden of proving that transfer is warranted. *Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir.), *cert. denied*, 464 U.S. 1017 (1983).

Aside from defendant's arguments about the forum selection clauses discussed *supra*, defendant does not contend that venue is improper in this district. There is also no dispute that these cases could have been brought in the Central District. The primary dispute is whether transfer will serve the convenience of the parties and witnesses. The Court evaluates the following factors to determine which venue is more convenient to the parties and the witnesses: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *See Jones v. GNC Franchising Inc*., 211 F.3d at 498-99.

The Court concludes that defendant has not met its burden to show that these cases should be transferred because the above factors are largely neutral. The plaintiffs chose to litigate this case in the Northern District of California. However, a plaintiff's choice of forum is entitled to less deference where, as here, the case is brought as a nationwide class action lawsuit. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir.1987).

The remaining factors are also neutral. Both parties could litigate this suit in either fora. UMG is a nationwide company and has resources to litigate in this district, as evidenced by UMG's filing of 70 lawsuits in this district since 2000. Erlewine Decl. at ¶¶ 7-8. Likewise, several of the named plaintiffs reside in Southern California and thus could litigate these cases in Los Angeles as well as San Francisco. Both parties claim that litigating in the forum not of their choice would be inconvenient to witnesses and increase the difficulty of access to evidence. Defendant claims that the core of this lawsuit is the interpretation of the contracts between UMG and the recording artists, and that witnesses, such as the lawyers who drafted those contracts, reside in Los Angeles. In contrast, plaintiffs contend

5

that the more relevant agreements are those between UMG and the music download providers, who are largely located in the Bay Area. On this record, the Court cannot make an assessment as to which contracts and witnesses are more important. However, at the very least, it appears that both sets of witnesses and documents are relevant, and thus this factor is neutral.

The remaining factors are similarly neutral. Both the Central and Northern District are familiar with and able to apply the applicable law, and both districts have an interest in the controversy. Neither party has addressed the relative congestion in each district.

Accordingly, on this record the Court concludes that defendant has not met its burden to show that the Central District is a more convenient venue, and DENIES defendant's motions to transfer.

## II. Motions to dismiss UCL claims

Defendant moves to dismiss plaintiffs' claims under California Business & Professions Code § 17200. In both cases, plaintiffs allege that UMG knowingly breached its contracts with recording artists and music producers, and that "UMG either knew, recklessly disregarded, or should have known that its collection of income from Music Download Services and Mastertone Providers was in connection with a license agreement and the royalties payable to Plaintiff and the Class should have been accounted for and paid on that basis." *James* Compl. ¶ 69. The complaints also allege that "failing to disclose the unlawful nature of its conduct, and employing such devices as are alleged above, as well as affirmatively representing its authority to collect and account for this income on such basis, had a tendency to mislead recording artists and producers, and the gravity of the misconduct outweighs any possible economic justification for such conduct – of which there is none." *Id*. The complaint also alleges that "the harm to plaintiff and the class arising from UMG's deceptive and unlawful practices outweighs the utility, if any, of those practices." *Id*. ¶ 70.

Defendant contends that plaintiffs' § 17200 claims must be dismissed because plaintiffs are neither consumers nor competitors of UMG. Citing *Prata v. Superior Court*, 91 Cal. App. 4th 1128 (2001), defendant contends that cases that do not involve business competitors, and that are not "brought to vindicate the rights of individuals consumers" but instead involve "sophisticated business finance issues," do not implicate § 17200. *Id*. at 1143. Plaintiffs respond that courts have interpreted the

language of section 17200 broadly, and that standing under the UCL is not limited to business competitors and individual consumers. Plaintiffs argue that they have stated a claim because the complaints allege that UMG's misconduct has harmed the general public. Plaintiffs note that the complaints allege that the California Senate Select Committee on the Entertainment Industry cautioned the major record companies against engaging in policies and practices that constitute "purposeful neglect" of their royalty participants. *James* Compl. ¶ 9.

The Court concludes that plaintiffs have stated a claim under § 17200, and that the questions raised by defendants' motions are better suited for determination on a full factual record. The Court notes that several of the cases relied upon by defendants were decided on summary judgment. *See, e.g.*, *Rosenbluth Int'l, Inc. v. Superior Court*, 101 Cal. App. 4th 1073, 1077-78 (2002); *Prata*, 91 Cal. App. 4th 1128. The Court agrees with Judge White's analysis in *In re Webkinz Antitrust Litigation*, 695 F. Supp. 2d 987 (N.D. Cal. 2010), where he stated,

> [T]he central issue presented under California law is whether the public at large, or consumers generally, are affected by the alleged unlawful business practice of defendants. The relative size of the plaintiff companies and whether or not there is a contract for the plaintiffs to rely upon is secondary to the analysis of whether, as a result of the alleged unfair or fraudulent business practice, consumers are adversely affected.

*Id*. at 998-99. In *Webkinz*, the plaintiffs were retailers who alleged that the defendant's failure to deliver products in a "reasonably timely manner" constituted a violation of § 17200. The defendant moved to dismiss the § 17200 claim on the same grounds asserted by defendant here, namely that the plaintiffs were neither consumers nor competitors of the defendant. *Id*. at 998. Judge White disagreed, finding "[t]he California UCL grants standing to companies of varying size, to defend the rights of the general consuming public against unfair and fraudulent business practices." *Id*. However, Judge White dismissed the plaintiffs' claims with leave to amend because the complaint did "not allege facts sufficient to demonstrate a connection to the protection of the public." *Id*. Here, the complaints do allege a connection to the protection of the public.

Defendant also contends that plaintiffs' § 17200 claims are no more than claims for breach of contract, and that plaintiffs have not alleged conduct that is "unlawful," "unfair" or "fraudulent." "An act that breaches a contract may also breach the UCL . . . when the act is unfair, unlawful or fraudulent for some additional reason." *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1110

7

(E.D. Cal. 2010). The Court finds that plaintiffs have alleged more than just a breach of contract because the complaints allege that UMG engaged in a broad scheme to underpay numerous royalty participants, including formulating "an opaque and artificial method for accounting for and paying its royalty participants for income derived from such licenses," and engaging in a "sustained public relations effort designed to convince the public that it had employed 'groundbreaking' and 'enlightened' accounting practices that actually benefitted (rather than cheated) the Class." James Compl. ¶ 10. These allegations are sufficient to state a claim. *See Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463, 1483 (2005) "[A] systematic breach of certain types of contracts (e.g., breaches of standard consumer or producer contracts involved in a class action) can constitute an unfair business practice under the UCL.").[3]

## III. Motion to intervene

The Tubes have filed a motion to intervene as a plaintiff and class representative in the *Zombie* action. The Tubes is a San Francisco-based rock band that has a recording contract with UMG. The Tubes argue that "[i]t presents claims parallel to those before this Court on behalf of plaintiffs Rob Zombie, White Zombie, Whitesnake, and Dave Mason . . . and plaintiff Rick James. . . ." Motion at 2:5-6. Defendant contends that The Tubes has not shown that it meets the tests for intervention as of right or permissive intervention.

The Court agrees with defendant that The Tubes has not demonstrated that intervention is appropriate. For both intervention by right and permissive intervention, an intervening party must show that the applicant's interest is inadequately represented by the parties to the action. *See Wilderness Soc'y et al. v. United States Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc) (intervention as of right); *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (permissive intervention). Here, The Tubes assert claims "parallel" to those already pending before the Court, and

---

[3] Defendant also contends that plaintiffs cannot seek restitution and injunctive relief, the two remedies available under the UCL, because plaintiffs seek damages for breach of contract. Plaintiffs respond, *inter alia*, that they may plead alternative theories of recovery for the same conduct. The Court finds that the complaint sufficiently alleges a basis for seeking these alternative remedies, and that questions about the appropriateness of specific remedies are premature at this stage of the litigation.

thus The Tubes' interests are already represented in these cases. If plaintiffs in these cases, who the Court notes are represented by the same counsel as The Tubes, believe that The Tubes should be added as a class representative, plaintiffs may seek to amend the complaints.

## CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motions to transfer, DENIES defendant's motions to dismiss, and DENIES the motion to intervene. Docket Nos. 21 & 25 in C 11-1613 SI and 9, 12 & 14 in C 11-2431 SI.

**IT IS SO ORDERED.**

Dated: November 1, 2011

SUSAN ILLSTON
United States District Judge